IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                      No. CR 00-1257 CLH

ROBERT ALLEN THOMAS,

    Defendant.

## **FINDINGS OF FACT AND MEMORANDUM OPINION**

On February 13, 2001, the Court began a sentencing hearing. Previously, Defendant had submitted two objections to the initial version of the Presentence Report. One objection related to the number of criminal history points the United States Probation Office had determined should apply. That objection was resolved prior to commencement of the February 13, 2001 sentencing hearing and the parties agreed that there was a single criminal history point resulting in a criminal history category of I as reflected in revised page 8 of the Presentence Report. The second objection was to the addition of two offense levels under United States Sentencing Guideline Section 2D1.1(b)(1) for the possession of a dangerous weapon in relation to a drug offense. Defendant, Robert Allen Thomas, testified during the February 13, 2001 hearing regarding the two offense level increase under Section 2D1.1(b)(1). At the conclusion of Defendant's testimony, counsel for Defendant stated that Defendant did not object to a continuation of the sentencing hearing in order to permit the government to present additional evidence.

On March 9, 2001, the government filed its Objection to Presentence Report (Doc. No. 32) presenting the following objections:

    1.        The Defendant's base offense level should be increased by two offense levels for

        obstruction of justice under United States Sentencing Guideline Section 3C1.1 by reason of the Defendant giving false testimony during the hearing on February 13, 2001.

2.     The Defendant's base offense level should not be lowered by three levels for acceptance of responsibility under United States Sentencing Guidelines Section 3E1.1 because the Defendant attempted to obstruct justice by testifying falsely at the sentencing hearing on February 13, 2001 as a consequence of which he did not clearly accept personal responsibility for his criminal conduct.

3.     The Defendant's base offense level should be level forty-three as determined by United States Sentencing Guidelines Section 2D1.1(d)(1) because the Defendant had killed a victim "under circumstances that would constitute murder under 18 U.S.C. § 1111."

At a hearing on April 10, 2001, the government called three witnesses who gave credible testimony that supports the statements of fact set forth in paragraphs 7, 8, 9, 10, 11, 12, 13 and 17 of the Presentence Report and the Court hereby adopts the factual statements in those paragraphs as factual findings of the Court.

**United States Sentencing Guidelines Section 3C1.1 -- Obstruction of Justice**

        The government contends that the Defendant obstructed justice or attempted to obstruct justice in two ways:

1.     By testifying falsely on February 13, 2001 that the methamphetamine he possessed was for personal use, and

2.     By denying under oath on February 13, 2001 that he possessed dangerous

weapons in relation to a drug trafficking offense.

Defendant entered a plea of guilty to a charge that he manufactured fifty grams or more of methamphetamine in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 841(b)(1)(A). Moreover, Defendant stipulated in paragraph 7(a) of his Plea Agreement that he was responsible for eighty-four grams of "actual" methamphetamine and that his resulting base offense level should be thirty in accordance with United States Sentencing Guidelines Section 2D1.1(a)(3). Defendant's testimony on February 13, 2001 to the effect that he manufactured methamphetamine only for his personal use, which the Court finds was false testimony, did not result in an obstruction of justice affecting Defendant's guideline sentencing, because at the hearing on April 10, 2001, counsel for Defendant reaffirmed Defendant's stipulation that he was responsible for manufacturing eighty-four grams of "actual" methamphetamine. Defendant's false testimony about manufacturing the methamphetamine for personal use does, however, reflect Defendant's propensity for dishonesty and lack of truthfulness.

At the hearing on February 13, 2001, the questioning of Defendant about the firearms located in the mobile home where he manufactured methamphetamine began with the following exchange:

> Q. Okay. Now I want to talk to you about firearms. Were there any firearms in that trailer residence on March 23rd?
> A. Yes, there were.
> Q. Okay. And can you tell the Court, if you would, first of all, what type of firearms were located in there?
> A. They were .22 caliber rifles.
> (Page 7, transcript of February 13, 2001 hearing).

Defendant then went on to testify that he and co-Defendant Brian Lee Bradford had stolen two .22 caliber rifles a week or two before March 23, 2000, the date they were observed in the

3

trailer home by law enforcement officers, and that he had pled guilty to stealing those firearms. In regard to them, Defendant testified that they were used only for target practice and that "we did not use them in connection with the drugs." During the hearing on February 13, 2001, Defendant did not disclose, in response to the question by his own counsel about telling the court what type of firearms were located in the mobile home, that in addition to the two rifles that he had stolen there were a lever action 30-30 rifle hanging on a wall and a 12 gauge pump shotgun leaning up against a wall. The Court finds specifically that the 30-30 lever action rifle and the 12 gauge pump shotgun were present in the mobile home residence where Defendant manufactured methamphetamine and that Defendant testified falsely when he did not mention them in response to the question which asked him to tell the Court what type of firearms were located in the residence. Moreover, the Court finds, specifically, that Defendant testified falsely on February 13, 2001 in the following instances:

> Q. Why did you keep those firearms?
> A. We target practiced with them. That was the only – we only used them the one time.
> Q. Did you use them to defend yourself?
> A. No.
> Q. Did you use them in connection with the manufacturing of methamphetamine?
> A. No, ma'am, we did not. We had only had the rifles for maybe a week and a half. We did not use them in connection with the drugs.
> (Page 9, transcript of February 13, 2001 hearing).

In addition, the Court specifically finds that the following testimony also was willfully false:

> Q. In close proximity to the weapons?
> A. Yes, if it was in his bedroom that's where it would be. The weapons were not used to protect the drugs.
> (Page 16, transcript of February 13, 2001 hearing).

At the hearing on April 10, 2001, the government presented credible testimony that numerous weapons had been present in different locations within the mobile home where Defendant manufactured methamphetamine.  Based on the testimony of the Defendant and the government witnesses, and having judged their credibility, the Court finds that the lever action 30-30 rifle, the 12 gauge pump shotgun, the .222 rifle stolen by the Defendant, and the .22 caliber rifle stolen by the Defendant, each was a dangerous weapon possessed by the Defendant at the time he committed the offense to which he pled guilty.  Hence, the Court has found that Defendant testified falsely (1) by consciously and willfully failing to admit the presence of the 30-30 caliber rifle and the 12 gauge pump shotgun and (2) by falsely saying that the stolen rifles were used only for target practice and not to protect the drugs.  The Court concludes that the Defendant willfully attempted to obstruct or impede the administration of justice during sentencing of the instant offense of conviction and that the obstructive conduct related to Defendant's offense of conviction and any relevant conduct.  Consequently, Defendant's base offense level should be increased two levels in accordance with United States Sentencing Guidelines Section 3C1.1.

**United States Sentencing Guidelines Section 2D1.1(b)(1) – Possession of Dangerous Weapon.**

The government showed clearly and convincingly that "a dangerous weapon (including a firearm) was possessed" at the time the Defendant committed the offense to which he pled guilty. Application Note 3 that applies to Section 2D1.1 states:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons.  The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.

Having judged the credibility of the Defendant at the time he testified, the Court finds that the Defendant testified falsely on this issue and the Court concludes that it was not "clearly improbable that the weapon was connected with the offense." In fact, the Court concludes that each of the four weapons described above was connected with the offense. Thus, the United States Probation Officer who prepared the Presentence Report correctly added two offense levels to the base offense level under Section 2D1.1(b)(1) as shown in paragraph 23 of the Presentence Report. Defendant's objection to that two-level increase will be denied.

**United States Sentencing Guidelines Section 3E1.1 – Acceptance of Responsibility.**

The government also argues that since the Defendant attempted to obstruct justice he should be disqualified from receiving a subtraction of levels for acceptance of responsibility in accordance with United States Sentencing Guidelines Section 3E1.1. The Court agrees. Application Note 4 to United States Sentencing Guidelines Section 3E1.1 states:

> Conduct resulting in an enhancement under Section 3C1.1 (obstructing or impeding the administration of justice) ordinarily indicates that the Defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both Sections 3C1.1 and 3E1.1 may apply.

The Court finds that this is not an extraordinary case in which adjustments under both Section 3C1.1 and Section 3E1.1 should apply. In reaching this conclusion, the Court also notes that in Defendant's statement of acceptance of responsibility, which is set forth in paragraph 19 of the Presentence Report, he hedged by stating that "I had the supplied (sic) to make meth, and I had been doing it for a couple of years for my own personal use. I accept responsibility for my actions." This is far short of a forthright statement that he manufactured the methamphetamine for distribution and the Court finds that the manufacture of eighty-four grams of "actual"

6

methamphetamine would not have been for his personal use. The Court therefore determines that the government's objection to the subtraction of three offense levels under Section 3E1.1(a) and (b) of the Guidelines, as set forth in paragraphs 29 and 30 of the Presentence Report, should be sustained and the subtraction of those three offense levels should not be allowed.

These findings and rulings result in a total offense level of 34. Defendant's criminal history category is I. According to the sentencing table, a total offense level of 34 and a criminal history category of I establish a guideline imprisonment range of 151-188 months.

**United States Sentencing Guidelines Section 2D1.1(d)(1) -- Murder**

At the beginning of the hearing on April 10, 2001, the Court advised counsel that it would not on that date hear testimony about the government's contention that Defendant's base offense level should be 43 as determined by United States Sentencing Guidelines Sections 2D1.1(d)(1) and 2A1.1 because Defendant had not been afforded adequate time to prepare for a hearing on that issue. The Court notes that in its Objection to Presentence Report filed March 9, 2001 the government stated that Defendant's co-Defendant, Brian Lee Bradford, had confessed to killing Sean Conroy, the person the government now contends Defendant killed:

> After his arrest, Bradford admitted to killing Sean Conroy. Bradford claimed that Conroy and Thomas got in a fight and Conroy moved out. Bradford said that he alone picked up Conroy and drove him towards Sierra Vista, Arizona. En route to Arizona, Bradford claims that Conroy pulled a knife and threatened to kill him. According to Bradford, he pulled a .22 caliber pistol and shot Conroy in the fact (sic) at point blank range. He then dumped the body in Arizona and returned to Buckhorn, New Mexico. According to Bradford, he disassembled the gun and threw it out the window en route back to New Mexico.
> (Page 4, Objection to Presentence Report filed March 9, 2001).

The government takes the position that Bradford's confession is inconsistent with physical evidence and the government believes that Defendant, Robert Allen Thomas, in fact shot Sean

Conroy.  The Court is of the view that the question of who killed Sean Conroy would be more appropriately decided by a jury in a criminal prosecution instead of by a judge hearing evidence not admissible under the Federal Rules of Evidence at a sentencing hearing.  The Court, therefore, asks counsel for the government to reconsider its request that Defendant's base offense level in this case be level 43 based on Section 2D1.1(d)(1) of the United States Sentencing Guidelines.  The Court requests that counsel for the government notify the Court and counsel for the Defendant by not later than May 15, 2001 whether the government insists on proceeding with its Objection to Presentence Report based on United States Sentencing Guidelines Section 2D1.1(d)(1).

*[signature: James A. Parker]*

_____
CHIEF UNITED STATES DISTRICT JUDGE